## CITY OF EL PASO v. FORT DEARBORN NATIONAL BANK ET AL.

### No. 1206. Decided May 11, 1903.

1.—Assignment of Error—Sufficiency of Evidence.

An assignment of error in the refusal to grant a new trial for newly discovered evidence on an issue of fact, does not raise the question of the sufficiency of the evidence introduced on the same issue to sustain the verdict. (P. 499.)

2.—New Trial—Newly Discovered Evidence—Diligence.

No sufficient diligence was shown to warrant a new trial for newly discovered evidence of facts supporting the validity of a probate sale, where such evidence was that of an attorney of record, whose connection with the case appeared by the papers relied on by the complaining party to make out his title. (Pp. 499, 500.)

3.—Limitation in Favor of United States.

Limitation ran in favor of the United States for land held by it; and title thereby could be asserted by its grantee though the United States was not a party to the suit. (Following Stanley v. Schwalby, 147 U. S., 508, and 162 U. S., 255, reversing same case in 85 Texas, 348.) (P. 500.)

**4.—Limitation—Deed Void on Its Face.**

An instrument which, tested by itself alone, appears to be void, is not such a deed as will support title by five years limitation; but this principle applies only to deeds shown by their own recitals and provisions to be nullities, not to those which contain the essential constituents of conveyances, but are void because of want of power to convey, or other evidence appearing aliunde. (Pp. 501, 502.)

**5.—Same—Administrator's Deed—Order of Confirmation.**

An administrator's deed properly describing the land conveyed but reciting no order of confirmation, had, attached to and as a part of it, a certified copy of an order made in vacation and confirming sale of a different piece of land; but there was a subsequent order confirming the sale, with a description sufficiently identifying the land by reference to the deed. Held, that such deed was sufficient to support limitation by five years possession, and was not affected, for such purpose, by a disqualification of tne judge ordering and confirming the sale not apparent from its recitals. (Pp. 500-502.)

**6.—Same.**

The failure of an administrator's deed to recite the order of confirmation, as required by the statute, controls its effect as evidence, but not its validity as a deed, and does not prevent its operating as a basis for claim of title by limitation. (P. 502.)

**7.—Administrator's Sale—Deed—Subsequent Confirmation.**

An administrator's deed made before sale was confirmed took effect upon its subsequent confirmation. (P. 502.)

**8.—Limitation—Possession—Occupation as Cemetery.**

Use by the United States government of a part of a block of land, with enclosure, as a burial place for soldiers at a military post, was such possession as would give title under the five years statute of limitation to the limits of the recorded deed to the block under which such possession was held. (Pp. 502, 503.)

**9.—Practice in Supreme Court—Rendering Judgment.**

Where the facts establishing title in defendant are conclusively shown, without conflict in testimony, the Supreme Court, on reversing a judgment against him, renders it in his favor. (P. 503.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from El Paso County.

The Fort Dearborn National Bank and others sued the City of El Paso in trespass to try title, and recovered judgment which was affirmed on defendant's appeal. The city then obtained writ of error.

*J. L. Dyer,* City Attorney, *W. W. Turney,* and *Gregory & Batts,* for plaintiff in error.—The Court of Civil Appeals erred in holding that the statutes of limitation did not run in behalf of the United States, grantor of defendant, for any part of the time, during its occupancy extending from 1865 to 1894, and refusing to consider the several errors assigned by appellant with reference to such limitation. Stanley v. Schwalby, 147 U. S., 508.

The Court of Civil Appeals erred in its refusal to reverse this case because of the error of the trial court in overruling the motion for a new trial predicated upon the discovery of new evidence with reference to the disqualification of the judge under whose order the administrator's deed under which defendant deraigned title was made.

Vol. 96 Supreme—32.

The Court of Civil Appeals erred in not sustaining appellant's sixteenth assignment of error, as follows:

The court erred in refusing to grant the defendant a new trial on the ground that the verdict of the jury was contrary to the charge of the court and the evidence, specifically in this, that in special charge number 5, the court instructed the jury as follows: "At the request of the defendant you are charged as follows: If you believe from the evidence that the United States, for a period of five years, under a deed duly registered, between July 14, 1875, and April 16, 1894, held peaceable, continuous, uninterrupted, exclusive and adverse possession to any part of the land sued for by plaintiffs, using and enjoying the same, then you are instructed that such possession, if any of said part for said time was used and enjoyed as aforesaid, would extend to all the land embraced in a deed to the United States government, and if you so believe, you will find for the defendant, the city of El Paso." And the undisputed evidence showing that the United States government for many years prior to 1875, and during the year 1875 and continuously thereafter up to and including the fall of 1882, had used a portion of block No. 8, inclosed by a stone and earthen wall, such possession would, under the charge of the court, have entitled the defendant to recover to the extent of the boundaries described in the deed under which the government held; and the verdict of the jury in finding for the plaintiff is directly contrary to the said instruction and the undisputed facts, and the court should have granted a new trial when its attention was called thereto. Halbert v. Martin, 30 S. W. Rep., 388.

*Patterson & Buckler* and *Thos. P. Bradfield,* for defendants in error. It is not admitted or even suggested by us that the trial court committed any error in any portion of its charge respecting the statute of limitations, as against the appellant, but we suggest that even if it did the error is entirely immaterial in this case in so far as appellant is concerned, for the reason that the appellant, the defendant below, had no right to claim the benefit of the statute of limitations of either five or ten years under any kind of possession held by the United States government, but while the United States government was in possession of the property, if it was in possession of the property, the statute of limitations ceased to run, and the appellant in this case had no right to take advantage of the same. Stanley v. Schwalby, 85 Texas, 352; Whatley v. Patten, 10 Texas Civ. App., 117.

This court has no right to consider the question of the sufficiency of the evidence to show disqualification of M. A. Jones, who pretended to act as special judge in ordering the sale of the real estate in controversy. No special charge was asked by the defendant in the trial court raising in any way the sufficiency of the evidence with respect to the matter mentioned, and no such point was made in the motion for a new trial in the trial court, and no such point was raised in the appellant's brief in the Court of Civil Appeals.

There is absolutely no evidence that during the years from 1875 to 1882, when the cemetery was abandoned, any claim whatever was ever made to the property by the United States government, or that anyone ever had authority from the United States to make such a claim. It must be noted (1) that there was no pleading or intimation in the pleadings that any person ever held possession of the property as authorized agent of the United States; and (2) there is no pleading or intimation that anyone ever held possession claiming authority from the United States to do so; and (3) there is no pleading or intimation that anyone ever actually had any authority from the United States to claim and hold the property for the United States. Now we say that it is apparent upon the very face of the opinion of the United States Supreme Court in Stanley v. Schwalby, 147 U. S., 508, that all of these conditions must be shown before even the unreasonable rule announced in that case could be applied. Most assuredly all of these essential facts could not be presumed from the mere fact that during a term of years a few dead soldiers were buried on a piece of the ground.

As is shown by Justice Field's dissenting opinion, the United States Supreme Court in the Schwalby case, entirely overlooked the meaning of the expression "adverse possession."

WILLIAMS, ASSOCIATE JUSTICE.—The defendants in error as plaintiffs in trespass to try title recovered in the District Court judgment against the city for block 8 in survey No. 9, Hart's addition to the city of El Paso. The writ of error was granted from a judgment of the Court of Civil Appeals affirming the judgment of the District Court. The plaintiffs below derived their title from the heirs of Simeon Hart, who died intestate in January, 1874. The defendant derived its title from the United States, through a proclamation of the President authorized by act of Congress. The United States received their title through a sale by the administrator of Simeon Hart's estate made in 1875. This sale was found in the trial court to have been void because of the disqualification of the special district judge who ordered and confirmed it. In the application for the writ of error complaint was made that the evidence was insufficient to justify this finding, and in acting upon the application, this court was strongly inclined to the opinion that the evidence was legally insufficient to rebut the presumption in favor of the validity of such judicial proceedings after such great lapse of time and to show that the special judge was, when he acted as such, interested in the estate. We find, however, that no question of the kind was made in the Court of Civil Appeals, and hence we are not authorized to consider the assignments attempting to raise it here. The assignments of error in the Court of Civil Appeals did complain of the refusal of the District Court to grant a new trial upon newly discovered evidence bearing upon the question of the judge's disqualification, but in no way did they call in question any action of the court during the trial upon that question. We can not say that the mo-

tion for new trial excused the failure of the defendant to earlier learn of the evidence for which the new trial was sought, considering that it was that of the attorney who conducted the probate proceeding and whose name was signed, as such, to the papers on which defendant relied to make out its title. We say this much in order that it may not be thought that we have passed upon the sufficiency of the evidence upon which plaintiffs relied to defeat the administrator's sale.

A number of other questions were raised in the Court of Civil Appeals and are pressed here, but we find it unnecessary to decide any of them except those affecting the defense of limitation under the five years statute. That defense is based upon possession held by the United States; and the District Court, holding that limitation would run in favor of the United States, submitted to the jury the question as to the sufficiency of the possession, and the jury by their verdict found that it was insufficient. The Court of Civil Appeals disposed of all assignments upon this branch of the case by holding, in accordance with the opinion of this court in Stanley v. Schwalby, 85 Texas, 348, that, as the United States could not be sued, no limitation ran in their favor, and refusing to follow the subsequent decisions of the Supreme Court of the United States in the same case (147 U. S., 508; 162 U. S., 255) announcing a contrary doctrine, because the rights of the United States and its officers and agents are not involved. The decisions of the Supreme Court of the United States hold that the United States, holding possession of property through their officers and agents, are entitled to the benefit of statutes of limitation, and we think the opinion of that court should be followed, as the question is one upon which its authority is final. The fact that another has acquired the title of the United States and is the only party to the litigation, does not alter the question. Such party is as much entitled to the protection of the rule as the United States would be were they before the court.

The assignments of error of plaintiff in error assert the contention that the undisputed evidence shows that the United States, before their conveyance to the city, had acquired title under the five years statute of limitation. The first question involved in this contention is as to the sufficiency of the deed from the administrator of Hart's estate to the United States to support such a defense. The record shows, that, apart from the question as to the qualification of the special judge, the order for the sale of the property in question was regular and authorized the sale made. On the 7th day of April, 1875, the administrator reported to the judge that he had on December 10, 1874, sold to the United States "fractional block 6 out of survey No. 9 situated within the corporate limits of El Paso, it being the fractional block upon which the United States cemetery is situated." The property in controversy is block 8 of the named survey, and the United States cemetery extended from block 7 across a space which had, in the subdivision, been left for a street, to and upon block 8, thus occupying parts of both blocks and of the space left for the street. This report was confirmed April 7,

1875, in general terms, by the special judge in chambers.   On the 10th day of May, 1875, the administrator filed another report of the sale as made December 10, 1874, describing the property sold as in the first report.   On May 11, 1875, the court made an order on this report, first describing the property as in the report, but adding that it was particularly described in a deed of date December 10, 1874, from the administrator to the United States, and confirming the sale.   The deed from the administrator to the United States bears date December 10, 1874, and was acknowledged the next day, but was not filed for record until July 14, 1875.   It recites the application for and order of sale, but no order of confirmation, and assumes, "by virtue of the premises," to convey to the United States the property sold, particularly described by metes and bounds which are admitted to embrace blocks 7 and 8, no reference being made to fractional block 6.   Attached to this deed and made a part of it was a certificate of the clerk of the District Court that the sale had been confirmed, giving a copy of the order of confirmation made in chambers.   These proceedings taken together, as they must be in order to identify the property sold, plainly show that it was that upon which the United States cemetery was located, and that the description of it in the reports of sale and orders of confirmation as being upon fractional block 6 was an error.   The last order of confirmation confirms the sale as of the land described in the deed and leaves no doubt as to the property which had in fact been sold by authority from the court.   This disposes of all questions as to the identity of the land, which is sufficiently described in the deed to meet the requirements of the statute of limitations.

It is urged that the deed, upon its face, appears to be a nullity because it recites no order of confirmation, but has attached to it the order made in vacation, which, it is contended, is void.   The decisions, in this State, recognize the proposition that an instrument which, when tested by itself alone, appears to be void, is not a deed in the sense of five years statute of limitations.   Schleicher v. Gatlin, 85 Texas, 270; Fry v. Baker, 59 Texas, 404; Wofford v. McKinna, 23 Texas, 36; Kilpatrick v. Sisneros, 23 Texas, 113.   This principle has application only to deeds which are shown by their own recitals and provisions to be mere nullities, and not those which contain the essential constituents of conveyances, but are void because of want of power to convey or other defect appearing from evidence aliunde.   This distinction has often been applied to instruments executed by sheriffs, tax collectors, etc., which are in themselves complete as deeds, but do not pass title for want of authority to make them.   The governing principle was stated by Judge Wheeler in Wofford v. McKinna in this language: "But it does not follow that the conveyance is not a deed because the power of the agent is not produced; the production of the power is necessary to give effect to the deed, and render it operative to pass the title, but not to constitute it a deed.   A sheriff's deed is inoperative without proof of his power to sell; it is no evidence of title, without production of

the judgment and execution. And so of every conveyance executed by an agent or attorney in fact; the production of the power is necessary to complete the evidence of title. But it can not be said that the conveyance is not a deed until the power is produced." Tested by this rule the instrument in question must be held to be a deed sufficient for the purposes of the statute. But for the assumed disqualification of the judge, which does not appear from its recitals, it is clear that it would have passed the title of the estate, and this proves that it is, upon its face, a sufficient deed, inoperative only because of lack of authority behind it. The statute, it is true, provided that an administrator's deed, "shall recite the decree of confirmation; and the recitation of the order of confirmation shall be prima facie evidence that there was an order of sale, and that all the provisions of the law were complied with in making and executing such order." This gives to a deed complying with the provision a certain effect as evidence, but does not declare void conveyances which do not contain the prescribed recital. A deed without the recital does not have the effect as evidence of other facts contemplated by the statute, but it may have every other effect as a conveyance when the other proceedings showing authority to make it are produced. It therefore comes within the definition of deeds given in the decisions.

The fact that the order of confirmation made in chambers was attached to the instrument does not affect its character as a deed. Notwithstanding this, authority from the other order could be shown to sustain the conveyance, and this again illustrates that the real objection to it is not in the instrument itself, but arises from an assumed defect in the authority under which it was made. It is true that the statute did not contemplate that a deed should be made until there had been a confirmation. Until that had taken place the administrator had no power to convey; but a deed previously made would take effect upon confirmation. Such questions, however, as to the effect of the deed arise, not from that which appears on it, but from facts existing outside it. Whatever those facts may be, the instrument is a deed. When the deed in question was recorded there had been a confirmation complete in all things unless there was want of power in the special judge to act. The instrument under which the United States claimed title was therefore a sufficient basis for a claim under the five years statute, and the only question which remains for determination is whether or not there was held under it such possession of the land as to give title. Of this we entertain no doubt. The evidence shows that, during the lifetime of Simeon Hart the government had maintained a military post at Fort Bliss and had used blocks 7 and 8 as a burial ground for dead soldiers. What was the claim of title or right under which this was begun does not appear. But from the time of the purchase from Hart's estate, until the disinterment of the bodies, the property was openly used as a cemetery in which the bodies of soldiers who died at the post were regularly buried. As early as 1875 there was an inclosure

of parts of blocks 7 and 8 within a stone wall, which was maintained until the abandonment of the use of the place as a cemetery. The date when this abandonment took place is variously stated by the witnesses, but none of them fix it earlier than 1881. To that date from July, 1875, the undisputed evidence shows the occupancy and use of the property continued. The bodies were buried within the inclosure, and the graves were marked with monuments. The facts show that this was the purpose for which the government sought to acquire the title and the use to which it was devoted. The acts done constituted as strong an assertion of dominion and exclusive possession as is to be expected in such a use of property. The inclosure, the burials and the marked graves made the appropriation and occupancy as open, visible and notorious as if there had been actual residence upon the land. The burial of its soldiers there was an assertion by the government of the right to maintain the property as the burial ground of its dead and to protect their graves from molestation. The actual possession of a part of block 8 extended by construction to the whole of the ground described in the recorded deed. That such use of land may constitute a possession sufficient under the statutes of limitation to give title is recognized by the authorities. Mooney v. Cooledge, 30 Ark., 655; Zirngibl v. Calumet Dock Co., 157 Ill., 450; Conger v. Kinney, 16 N. Y. Supp., 752; Bonham v. Loeb, 107 Ala., 604. These were cases of private burial grounds, and in some of them there was a denial of the claim of title by limitation to more than the ground occupied by the graves, but this was for want of a larger claim under color of title; and the doctrine which we have announced was expressly recognized. That the use of a parcel of land held under a recorded deed as a public cemetery is all that is required to constitute adverse possession is, we think, quite clear. There is other evidence in the record of acts of possession by the United States, but as there is a conflict of testimony concerning them, we leave them out of view. The facts which we have stated are conclusively shown, without conflict, and established title in defendant.

The judgment of the Court of Civil Appeals and of the District Court will therefore be reversed and judgment will be here rendered for plaintiff in error.

*Reversed and rendered.*